IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| James L. Brown,<br>    Petitioner, | )<br>)<br>) |
| v. | ) No. 1:24-cv-372 (LMB/LRV) |
| K. Bowles,<br>    Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

James L. Brown ("petitioner" or "Brown"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his February 26, 2019 convictions in the Circuit Court for the City of Fredericksburg, Virginia, for one count of malicious wounding, two counts of assault and battery of a family member, one count of unlawful wounding, and one count of child cruelty.[1] Respondent filed a Rule 5 Answer and a Motion to Dismiss ("Motion"). [Dkt. Nos. 13–15]. Brown filed a Response on June 10, 2024, but because he had not received the Court's notice explaining his right to respond, on January 3, 2025, the Court issued its standard Notice. Brown responded by seeking more time to respond. On February 3, 2025, the Court granted Brown's request for an extension of time until March 10, 2025, but as of the close of business on March 24, 2025, Brown has not filed a further response. For the reasons that follow, respondent's Motion will be granted and the petition will be dismissed with prejudice.

---

[1] Brown was indicted for assault and battery of a family member, third or subsequent offense, and child abuse. The jury convicted Brown of two lesser included counts of assault and battery of a family member and found him not guilty of felony child abuse. Commonwealth v. Brown, Case Nos. CR18-496 through -498; CR1204 through -1206, at 519, 523) (hereinafter, "CCT at __").

On December 4, 2018, a jury in the Circuit Court of the City of Fredericksburg found petitioner guilty of one count of malicious wounding, in violation of Virginia Code § 18.2-51; two counts of assault and battery of a family member, in violation of Virginia Code § 18.2-57.2; one count of unlawful wounding in violation of Virginia Code § 18.2-51; and one count of child cruelty in violation of Virginia Code § 40.1-103. The jury recommended a sentence of 18 years in prison for malicious wounding; 12 months in jail for each assault and battery conviction; 2 years in prison for unlawful wounding; and 3 years in prison for child cruelty. [CCT at 521-22]. On February 14, 2019, the trial judge imposed the sentences recommended by the jury and the final judgment order was entered on February 26, 2019. Id. at 869-76.

Through appointed counsel, Brown filed a petition for appeal in the Virginia Court of Appeals arguing that the evidence was insufficient to support the malice element of his conviction for malicious wounding.[2] [Dkt. No. 14-8] at 5. On November 25, 2019, the court denied Brown's appeal in a per curiam order. [Dkt. No. 14-2]. The court summarized the evidence as follows:

> [T]he evidence showed that the victim and appellant had a daughter together. The victim described appellant as being "very controlling" and stated that they often argued. Before the incident, appellant was incarcerated, and he and the victim had ended their relationship. When appellant was released, the victim told appellant that she was not ready to get into a relationship, but she would allow him to see their daughter and they would "see where" their relationship went.
>
> Upon his release, appellant and the victim made plans for him to spend Easter with the victim and their daughter, and the victim asked appellant to please not drink alcohol before he arrived. She also told appellant that she did not want to have sex

---

[2] Brown was represented by attorney Robert B. McEntee, III at the preliminary hearing in the Juvenile and Domestic Relations Court for the City of Fredericksburg and after indictment. McEntee filed a motion to withdraw on July 20, 2018, citing disagreements with Brown over differences on defense strategy and a breakdown in their relationship. The circuit court granted the motion to withdraw on September 5, 2018, and appointed Tara-Beth Coleman to represent Brown at trial and sentencing. [CCT at 137-39, 180-81]. On February 19, 2019, the circuit court allowed Coleman to withdraw and appointed Christopher Reyes to represent Brown on appeal. Id. at 864.

2

with him during the visit. Appellant was drunk when he arrived at the victim's residence at about 7:00 a.m. and tried to have sex with the victim. When the victim refused to have sex, appellant became mad and irritated and asked the victim, "[A]re you fucking serious?" and[] "[A]re you really trying to play me right now?" Appellant and the victim argued, and the victim asked appellant to leave. Appellant said that he would leave and take their two-year-old daughter with him; he awoke the child and took her to the front door. The victim retrieved the child from appellant and turned to walk toward the daughter's bedroom, and appellant kicked the victim in her "butt and lower back" "as hard as he could." When the victim continued to carry the child to her room, appellant began striking the victim in the head, side, and "all over." The victim begged appellant to stop hitting her and used her arm to shield the child. However, appellant continued to hit the victim with both of his hands.

The victim put down the child, and appellant continued to hit the victim until she told him that she loved him. When appellant stopped hitting her, the victim was on the floor "in a pile" of blood, and she begged appellant to help her. The victim was unable to get up on her own, and appellant said, "[W]hat the fuck do you want me to do?" Appellant told the victim that their daughter was bleeding, and the victim had "made" him hit the child. Appellant also told the victim, "[L]ook what you made me do, this is what you get, you needed to learn your lesson." The victim got up, and her "blood [was] pouring down everywhere." She went to get her phone, and it was gone. She tried to leave, and appellant "ran up and slammed [the door] shut and he said, '[D]on't fucking try that again, do you want it again? do you want it again[?]'" The victim went to her bedroom to use her computer or an old phone to seek help, but appellant confronted her and stopped her from contacting anyone. The victim went into the bathroom to wash the blood from her face, and appellant said, "[Y]eah, look at your face, I fucked you up, didn't I[?]" The victim eventually talked appellant into letting her call her father to come to the residence.[3] Appellant repeatedly asked the victim what she was going to say about the incident, telling her that no one would believe her. Appellant changed out of his bloody clothes and left. The victim called 9-1-1, and she began to have a hard time breathing, choking on blood and blacking out.

On cross-examination, the victim acknowledged that when appellant was incarcerated and their relationship had ended, the victim dated another man which upset appellant. Appellant overheard their daughter call the man "[D]a-da," and that also troubled appellant. The victim testified that she explained to appellant that their daughter was only familiar with that man, was young, and did not "know any better." Appellant got angry and said that when he was released from incarceration; he was going "to kill the both of you guys."

Officer John Wood responded to the victim's residence and saw "a vast amount of blood and blood spatter on the walls in the dining room area." He stated that the

---

[3] Footnote No. 1 in the opinion reads as follows: "Appellant allowed the victim to reach into his pocket and retrieve her phone, because he said his hands were too swollen from hitting the victim." [Dkt. No. 14-2] at 3.

3

> left side of the victim's face "was completely swollen and almost looked void of form." She was covered in blood. Photographs of the residence were admitted into evidence. In addition, photographs of the victim's injuries were admitted into evidence. The victim suffered a fractured orbital, a broken nose, and had to be intubated.
>
> Detective Lamb interviewed appellant about the incident, and the interview was played at trial. At trial, appellant denied that he threatened to kill the victim. He stated that he and the victim argued on Easter morning and that the victim told him to leave. Appellant, who was holding their daughter, said he would leave, he was taking their daughter with him, and he would bring her back. According to appellant, the victim "snatched" their daughter from him, and appellant did not "remember too much after that." Appellant next recalled hearing the child screaming and seeing the victim on the floor asking him to help her. Appellant admitted that he caused the victim's injuries, stating that he "snap[ped]" when the victim snatched their daughter from him.

[Dkt. No. 14-2] at 2–4.

On May 4, 2020, Brown, proceeding pro se, filed a petition for a writ of habeas corpus in the circuit court seeking a belated appeal to the Virginia Supreme Court, alleging that he "was denied of his right to effective assistance of counsel because his Court-Appointed Attorney, Mr. Christopher M. Reyes," failed to appeal "to the Virginia Supreme Court." [CCT at 1037].[4] Respondent filed an answer admitting Brown was entitled to relief. Id. at 1076. On August 10, 2020, the Virginia Supreme Court granted Brown leave to file a notice of appeal and directed that the circuit court appoint counsel to represent him. Id. at 1105.

Timothy B. Barbrow was appointed to represent Brown and a belated notice of appeal was filed on November 11, 2020. Id. at 1116. A timely petition for appeal was filed on December 11, 2020, which raised the same issue that the Virginia Court of Appeals rejected

---

[4] The petition was filed in Brown v. Clarke, Case No. CL20-299. The circuit court record of the habeas proceedings has a civil docket number but was placed in the same file as the criminal proceedings with continuous pagination beginning at the end of the criminal proceedings. [CCT at 1041, 1046].

4

regarding the insufficiency of the evidence of malice. [Dkt. 14-10] at 4. On July 20, 2021, the Virginia Supreme Court denied the petition for appeal. [Dkt. 14-3].

On March 30, 2022, Brown, proceeding pro se, filed a second petition for a writ of habeas corpus in state circuit court. [CCT at 1969-2047]. The second petition was executed on March 16, 2022, and received in the prison mailroom on March 28, 2022. Id. at 1978, 2047. The circuit court ordered a response on April 1, 2022. Id. at 2049.

On April 28, 2022, Brown filed a motion to amend his second state habeas petition, which the court granted on May 5, 2022. Id. at 2094-2108, 2109.[5] The second petition, as amended, raised seven claims, five of which alleged that petitioner received ineffective assistance of counsel;[6] the other two claims alleged that the evidence was insufficient to support his convictions and that the prosecutor and police violated Brady v. Maryland, 373 U.S. 83 (1963) by failing to disclose exculpatory interview notes from the Department of Social Services. Id. at 2096-99, 2105.

On June 13, 2022, the respondent moved to dismiss the second state petition. Id. at 2140-58. On July 5, 2022, the court granted the motion to dismiss, id. at 2182-99, finding that both the insufficiency of the evidence and the Brady violation claims were barred by the rule of Slayton

---

[5] In 2005, the Virginia General Assembly amended Virginia Code § 8.01-654(B)(2), the successive writ statute, to allow a petitioner to file a second or successive petition for a writ of habeas corpus if the first state habeas petition was limited to seeking a belated appeal. See Sigmon v. Director, 739 S.E.2d 905, 907 (Va. 2013) (discussing 2005 amendment).

[6] Petitioner claims he received ineffective assistance of counsel when his trial attorney visited him just once, advised him to plead insanity, and later advised him to plead guilty and waive a preliminary hearing, id. at 2099-2100; when his trial attorney failed to seek an independent mental evaluation, id. at 2100-03; when his trial attorney said in her opening statement that Brown was guilty of "something," id. at 2103; when his appellate counsel failed to argue that the evidence was insufficient as to the charges against the child victim; and when his appellate counsel failed to make certain arguments to the Supreme Court of Virginia. Id. at 2105-08.

.
.

v. Parrigan, 205 S.E.2d 680, 682 (1974) for failure to have raised them at trial and/or on appeal. [Dkt. 14-6] at 12, 16-17. The court also found that the Brady violation claim had no merit because

> he has not established that the evidence was favorable to him or that he suffered prejudice. Brown's claim is essentially that the victim added to and changed her statements. Brown asserts that this demonstrates that the Commonwealth adduced perjured testimony. The interview notes from the Department of Social Services, however, do not indicate that the victim lied in her testimony. The victim consistently stated in the interviews and testified at trial that she sustained a substantial beating at Brown's hands. Moreover, Brown admitted before trial and at trial that he was responsible for the victim's injuries. Accordingly, Brown cannot demonstrate that the interview notes are favorable to him or that he suffered prejudice.

Id. at 13. The court concluded that Brown's ineffective assistance of trial counsel claims failed to state a claim under either prong of Strickland v. Washington, 466 U.S. 668, 687 (1984), id. at 6-12, 13-15, and that his ineffective assistance of appellate counsel claims were without merit, id. at 16, 17. The Virginia Supreme Court refused Brown's petition for appeal on March 17, 2023.[7] [Dkt. No. 14-4].

Brown, proceeding pro se, filed this 28 U.S.C. § 2254 petition on February 21, 2024.[8] The petition raises the following grounds for relief:[9]

1) Ineffective Assistance of Trial Counsel (Grounds One and Two).
   a. "Counsel Robert McEntee visited Petitioner one time and advised him to make an insanity plea. When petitioner got to court counsel told petitioner

---

[7] See James L. Brown v. Melvin Davis, Warden, Record No. 220594 (hereinafter "Hab. at __").

[8] The federal petition was filed on March 6, 2024, but Brown executed it on February 21, 2024. [Dkt. No. 1] at 29. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a document is considered filed by an inmate when it is placed in the prison mailing system for delivery).

[9] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted).

      to waive his preliminary in order to make an insanity plea in Circuit Court." [Dkt. No. 1] at 5.

    b. "Pretrial counsel Mr. McEntee ordered an [sic] competency evaluation without preparing or providing psychiatric or other relevant information to the evaluator within 96 hrs. pursuant to VA Code § 19.2-169(C), which made the evaluation incomplete and the evaluation only lasted 10 minutes, not enough time for sanity at the time of crime. I motioned the court for an [sic] re-evaluation and had new counsel Tarah-Beth Coleman appointed who did not fight for my evaluation but instead told the judge that with her experience with this particular evaluator that it would not matter. . . . Trial counsel did raise mental health at sentencing but without records this proved fruitless." Id. at 7-9;[10]

    c. "Not raising the Irresistible Impulse claim was ineffective and prejudiced the defendant." Id. at 10.

    d. "Trial counsel was ineffective for conceding guilt against her clients [sic] wishes. Petitioner admitted that he snapped and caused injuries to victim Courtney Brown and that he did not know how the child was injured. Petitioner wanted an insanity plea and plead not guilty at all times of every charge against him. In counsels [sic] opening and closing statements she concede [sic] petitioner's guilty [by saying] 'And at the end of the day you guys are going to convict him of something.'" Id. at 10. "Counsel should have argued that the defendant was incorrectly char[ged] and suffered a mental breakdown from lack of medication and mental help for over a year before this incident." Id. at 11.

2) Ineffective Appellate Counsel (Ground Three). "Appellate counsel was ineffective for not addressing "the m[e]rits of his case and new evidence received after trial that would help impeach the victim Courtney Brown." Id. at 14-15. Petitioner claims that the admission of his interview with Department of Social Services Detective Lamb, which was recorded without his notice, was a violation of his Fifth Amendment right against self-incrimination.

3) Prosecutor Misconduct/<u>Brady</u> Violation of Fifth and Fourteenth Amendments. (Ground Four). "The prosecutor & police violated petitioner's constitutional rights by intentionally and in bad faith withheld exculpatory and impeachment evidence [statements to the Department of Social Services] that would negate from his intent in this case. Petitioner admitted that he caused injuries to the victim Courtney Brown but claimed he snapped and does not remember the incident." Id. at 20.

4) Ineffective Belated Appeals Counsel (Ground Five). Petitioner's belated appeal counsel failed to raise numerous issues identified by petitioner, including that "the evidence was insufficient to convict on assault, unlawful wounding, and

---

[10] The August 28, 2018 competency report as well as the February 8, 2019 presentence report are part of the criminal record. [CCT at 166-69, 545-66].

7

child cruelty" and that "his rights to be recorded were violated by Det. Lamb" Id. at 24.

Respondent seeks dismissal of the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the U.S. Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Petitioner's direct appeal to the Virginia Supreme Court concluded on July 20, 2021, resulting in his convictions becoming final for purposes of applying the federal habeas statute of limitations 90 days later on Monday, October 18, 2021. See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (AEDPA's one-year period does not commence until the latest of the date when judgment on direct review "became final" or "the expiration of the time for seeking such review"). Petitioner had to file his § 2254 petition within one year from Monday, October 18, 2021, which was Tuesday, October 18, 2022. Petitioner filed his § 2254 petition on February 21, 2024. Therefore, absent statutory or equitable tolling, his federal petition is untimely.

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Petitioner executed his second state habeas petition on March 16,

8

2022, which tolled the federal statute of limitations. As of that date, 149 days of the federal statute of limitations had lapsed, leaving 216 days remaining after the tolling period ended on March 17, 2023, when the Virginia Supreme Court refused Brown's petition for appeal. Brown had until Thursday, October 19, 2023 to file his federal habeas petition. Brown, however, did not file his federal habeas petition until February 21, 2024—185 days after the federal statute of limitations had expired. Consequently, his federal petition is time-barred unless he can show that he is entitled to tolling under § 2244(d)(2).

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition,

> [t]he word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000); see also Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

Brown did not address timeliness in his federal petition and failed to explain "why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [his] petition," as required in paragraph 18 of the petition form. [Dkt. No. 1] at 27. Indeed, he did not address timeliness until he filed a response to the motion to dismiss. In that response, Brown argues that his federal petition should be deemed timely because, after he was transferred to Sussex I State

9

Prison in 2022,[11] he could not access the prison law library; he received incomplete cases; he was told by the institutional attorney that he had one year from the denial of his state habeas by the Virginia Supreme Court to file his federal habeas; and he was on the wait list for "8 months" before he saw the institutional attorney. [Dkt. No. 16] at 2. Brown states that he filed his federal habeas petition two weeks after he saw the institutional attorney at Sussex I. Id.

The record establishes that Brown was not diligent in pursuing federal habeas relief. He had just over six months left to file his federal petition after the Virginia Supreme Court refused his petition for appeal from the dismissal of his state habeas petition on March 17, 2023. At that time, he had presented seven of the nine claims he raises in his federal motion in his state habeas petition. He now concedes in his response that his claims about irresistible impulse and his Department of Social Services recorded interview "are raised for the first time in this writ and should be time barred and defaulted." [Dkt. No. 16] at 1. The record corroborates his concession. Brown was aware of the basis for both claims before he filed his second state habeas petition in March 2022. Although he did not list "irresistible impulse" in the claims section or in his amendments, he included a reference to it in a handwritten supplement he filed in the second state habeas proceeding. Id. at 1240-42, 2109. As for the recorded Department of Social Services interview, Brown has known about that since his trial.[12] Therefore, these two claims must be dismissed from Brown's federal habeas action.

---

[11] Brown states he was transferred to Sussex I on December 14, 2022. [Dkt. No. 16-1] at 7.

[12] At trial, Detective Lamb did not mention the interview or any statement by petitioner in his testimony on direct or cross-examination. [12/4/18 Tr. at 171-96]. During petitioner's case-in-chief, petitioner's counsel called Detective Lamb to authenticate the audio of the interview, which counsel moved into evidence as his exhibit. Id. at 234-36. Subsequent to his trial, petitioner mentioned the Department of Social Services interviews in a July 20, 2020 motion to amend filed in his first state habeas proceeding, [CCT at 1063, 1065], and he had a transcript of the recorded interview when he filed a motion to amend in his second state habeas proceeding, which was postmarked May 2, 2022. [CCT at 2095, 2096-97]. The interviews, including

10

As to the remainder of his federal claims, Brown did not need access to the law library to raise them because he had already briefed the claims in his second state habeas petition and his petition for appeal when that habeas was dismissed. In sum, all the information he needed to raise his claims in a timely manner was already known to him.

To the extent Brown relied upon the institutional attorney's incorrect advice regarding the federal statute of limitations, the Fourth Circuit "has held that 'a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding.'" Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003) (quoting Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000)) (collecting cases); see also Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is not a factor that can warrant equitable tolling").

Finally, the Supreme Court has expressly recognized that a state prisoner could avoid the federal statute of limitations running while pursuing potentially untimely state court proceedings "by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." Pace, 544 U.S. at 416 (citing Rhines v. Weber, 544 U.S. 269, 278 (2005)).[13] Under Rhines, petitioner could have filed in state

---

Detective Lamb's, were attached to Brown's petition for appeal, dated September 13, 2022. [Hab. at 102, 142, 151-54]. Further, a January 27, 2021 letter from Brown's appellate counsel indicated he was returning "the DSS documents" to petitioner as requested. Id. at 167-68.

Petitioner also had copies of the trial transcripts as evident from his reference to several different proceedings in his motion to amend. [CCT at 2100, 2103; Hab. at 159] (September 5, 2018, November 20, 2018, December 4, 2018).

[13] See Hyman v. Keller, 2011 U.S. App. LEXIS 15161 at *30 (4th Cir. Aug. 10, 2011) (holding Pace "extended the Rhines rationale beyond mixed 2254 petitions"); see, e.g., Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000) ("a prisoner who wants to pursue state relief while assuring an

11

and federal court and sought a stay and abey order to pause the federal proceeding while he sought to exhaust his claims in state court. Brown's federal petition is untimely because he was not diligent and, to the extent he may claim ignorance, the Fourth Circuit has explained that even if a pro se petitioner "did not understand how the statute of limitations operated in his case . . . ignorance of the law is not a basis for equitable tolling." See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Brown has failed to show that he was prevented from timely filing by extraordinary circumstances beyond his control. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the petition was not timely filed, and it is barred by § 2244(d)(1).

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 13] will be granted, and the petition will be dismissed by an order to be issued with this Memorandum Opinion.

Entered this 26th day of March, 2025.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do").